UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE M. REVERON,<br><br>    Plaintiff,<br><br>  v.<br><br>SPREADSHIRT, INC., et al.,<br><br>    Defendants. | CIVIL ACTION NO. 24-CV-4093 (JPC) (RFT)<br><br>**REPORT AND RECOMMENDATION** |

**ROBYN F. TARNOFSKY, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is Plaintiff's application to amend the complaint. (*See* ECF 30, Letter Seeking Leave To File Amended Complaint.) For the reasons set forth below, I respectfully recommend that Plaintiff's motion for leave to amend be **DENIED** but that Plaintiff, who is proceeding pro se, be permitted an additional opportunity to refile a motion to amend with a further revised complaint that addresses, if possible, the issues raised in this report and recommendation.[1]

## FACTUAL BACKGROUND

I take as true the allegations from the proposed amended complaint ("Proposed AC") (ECF 30).

Plaintiff acquired ownership of the JERSEY CITY® brand name in December 2023. (*See* ECF 30, Proposed AC ¶ 19.) Since at least 2001, Plaintiff's predecessors sold clothing under the JERSEY CITY® brand name. (*See id.* ¶ 10.) Since March 6, 2018, the mark JERSEY CITY® has been listed on

---

[1] A magistrate judge may grant a Rule 15 motion to amend by memorandum and order but must issue a report and recommendation to deny a motion to amend. *See, e.g., Xie v. JPMorgan Chase Short-Term Disability Plan,* 15-CV-4546 (LGS) (KHP), 2017 WL 2462675, at *1 (S.D.N.Y. June 6, 2017), *report and recommendation adopted,* 2018 WL 501605 (S.D.N.Y. Jan. 19, 2018).

the Supplemental Register. (*See id*. ¶ 23; ECF 30, Ex. A at 22.) Plaintiff has a pending trademark application on for the Primary Register. (*See* ECF 30, Proposed AC ¶ 24-25*.*)

Plaintiff and her predecessors have promoted and sold JERSEY CITY® branded clothing at a variety of stores, trade shows, and street fairs in the greater New York City area, including in Manhattan, New Jersey, and Connecticut, as well as through online sources and social media promotions. (*See id.* ¶¶ 11-13, 20.) JERSEY CITY® branded clothes have been promoted and endorsed by recording artists, music industry executives, clothing designers, and entrepreneurs and have an excellent reputation in the apparel industry. (*See id.* ¶¶ 14-15.)

Consumers associate the JERSEY CITY® mark with Plaintiff and her predecessors. (*See id.* ¶ 16.) Plaintiff concludes that the JERSEY CITY® brand name and mark have acquired secondary meaning in the marketplace in connection with clothing goods due to the longstanding use of the mark in the apparel industry by Plaintiff and her predecessors. (*See id.* ¶ 17.)

Defendants Spreadshirt and PlanetArt are commercial businesses that provide printing services to clothing companies and consumers and sell clothing, including to New York State and City residents, through online stores. (*See id.* ¶¶ 26-28, 66-68.) The items manufactured, promoted, and sold by Spreadshirt and PlanetArt include articles of clothing printed with the JERSEY CITY® mark. (*See id.* ¶¶ 29, 69.)

Spreadshirt and PlanetArt sell items bearing the JERSEY CITY® mark at cheaper price points than Plaintiff. (*See id.* ¶¶ 33, 72.) In addition, Spreadshirt uses the term JERSEY CITY as a keyword in online advertising. (*See id.* ¶ 30.)

Defendant Transform, a commercial business, acquired assets of Sears Holdings Management Corporation ("Sears") in 2019, after Sears sought bankruptcy protection. (*See id.* ¶

41.) Transform promotes and sells clothing printed with the JERSEY CITY® mark through an online retail store, www.sears.com, including to New York State and City residents. (*See id.* ¶ 44.)

Defendant Walmart-Stores, a commercial business and retailer of apparel, among other products, operates an online retail store, www.walmart.com and sells clothing bearing the JERSEY CITY® mark, including to customers in New York State and City residents. (*See id.* ¶¶ 54-57.)

Defendants' items bearing the JERSEY CITY® mark are not sold from or manufactured in the municipality called Jersey City. (*See id.* ¶¶ 37, 50, 62, 74.) Some of Plaintiff's customers contacted her in April 2024 asking if they could purchase shirts they had seen on the www.spreadshirt.com website directly from Plaintiff. (*See id.* ¶ 31.) Plaintiff was also contacted by customers about the clothing offered for sale online by Transform and Walmart-Stores; the customers thought the products sold by those retainers were sponsored by Plaintiff. (*See id.* ¶¶ 46, 58.)

## **PROCEDURAL HISTORY**

Plaintiff filed her pro se complaint ("Complaint") on May 28, 2024, alleging trademark infringement, unfair competition, and unjust enrichment against Defendants Spreadshirt, Inc., Sears Holdings Management Corporation, Walmart-Stores Inc., New Era Cap, LLC, and PlanetArt LLC. (*See* ECF 1.) On June 20, 2024, Walmart-Stores moved to dismiss, arguing that Plaintiff had failed adequately to allege secondary meaning in the Jersey City mark, that Walmart-Stores' use of the term "Jersey City" was descriptive and therefore non-infringing, and that Plaintiff had failed adequately to plead unjust enrichment. (*See* ECF 7, Mot. To Dismiss; ECF 9, Memo. of Law; ECF 10, R. David Hosp Decl.) On June 24, 2024, the Honorable John P. Cronan referred the case to a magistrate judge for general pretrial management and dispositive motions. (*See* ECF 11, Order of Reference.)

3

On July 6, 2024, Plaintiff filed a stipulation of voluntary dismissal as to Defendant New Era Cap, LLC only (*see* ECF 19), which Judge Cronan so ordered on July 15, 2024. (*See* ECF 22.)

On July 16, 2024, Plaintiff wrote to inform the Court that she would like to file an amended complaint. (*See* ECF 23, Letter; ECF 37; Plaintiff's Reply at 1-2 (indicating that Defendant Walmart Stores does not oppose Plaintiff's amendment).) However, she had missed the deadline for filing an amended complaint as of right and she did not have consent of all parties. On July 24, 2024, I issued an order stating that if Plaintiff wished to file an amended complaint without the consent of all parties, she would have to file (1) a proposed amended complaint and (2) a statement of the reason for the amendment, the lack of prejudice to the opposing parties, and (3) the lack of futility. (*See* ECF 25.)

On August 2, 2024, Plaintiff filed an application to file an amended complaint, along with a proposed amended complaint. (*See* ECF 30.) The Proposed AC replaces Defendant Sears Holdings Management Corporation with Defendant Transform SR Brands, LLC, and it also adds additional allegations about her use of "JERSEY CITY" as a mark. (*See id.*)

On August 16, 2024, Defendant PlanetArt filed its opposition to the application to file an amended complaint, arguing that while Plaintiff had taken some steps to bolster the allegations of secondary meaning, it would be futile for the Court to allow the proposed amendment because Defendants' use of the term Jersey City was descriptive and therefore non-infringing. (*See* ECF 34, Letter.) No other Defendant opposed the application. On August 26, 2024, Plaintiff filed reply materials in further support of her application to amend the Complaint. (*See* ECF 36, Decl. of Stephanie M. Reveron; ECF 37, Reply.)

4

On July 26, 2024, I granted a letter motion (ECF 27) to permit Defendant PlanetArt to respond to the operative complaint within seven days after a denial of the motion to amend or within 14 days of a decision granting the motion to amend. (*See* ECF 28.) On October 2, 2024, I granted a letter motion (ECF 39) to permit Defendant Spreadshirt to respond to the operative complaint within 14 days after a denial of the motion to amend or within 21 days after a decision granting the motion to amend. (*See* ECF 40.)

## LEGAL STANDARD FOR RULE 15 MOTIONS TO AMEND

As relevant here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). "Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc*., No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

## ANALYSIS

There is no reason to believe that Plaintiff is acting in bad faith in pursuing the amendment. It is reasonable for her to seek to name the proper Defendants. It also is reasonable for her to attempt to address issues with the Complaint raised by Defendants Walmart-Stores in its motion to dismiss. Nor is there any prejudice to Defendants given the early stage of the case. *See Uni-*

5

*World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 253 (S.D.N.Y. 2014) (amending the complaint prior to close of discovery will not prejudice the defendants) The only question is whether the proposed amendments would be futile – that is, whether the proposed AC could withstand a motion to dismiss. For the reasons set forth below, I conclude that the proposed amendments in the Proposed AC would be futile, but that Plaintiff, a pro se litigant, should be permitted an opportunity to refile her motion to amend with a further revised complaint that addresses, if possible, the issues raised in this report and recommendation.

**I.      The Proposed AC Does Not Adequately Allege
        Trademark Infringement or Unfair Competition**

Claims for federal and common law trademark infringement and unfair competition and common law trademark infringement and unfair competition, such as Plaintiff advances in the Proposed AC, are generally analyzed based on the same legal standard. *See, e.g., Privado Mktg. Grp. LLC v. Eleftheria Rest. Corp.*, No. 13-CV-3137 (ER), 2017 WL 1167332, at *7 (S.D.N.Y. Mar. 27, 2017) ("Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, trademark infringement under New York common law, and unfair competition under New York common law." (internal quotation marks and citation omitted)); *Lopez v. The Gap, Inc.* ("*Gap*"), 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) ("Under New York law, the elements necessary to prevail on causes of action for trademark infringement and unfair competition . . . mirror the Lanham Act Claims.").

To prevail on a Lanham Act trademark infringement claim, a plaintiff must show that her mark is entitled to protection and that the defendants' use of its mark is likely to cause confusion. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005). Whether the JERSEY CITY®

6

mark is entitled to protection rather than likelihood of confusion appears to be the primary issue here.

"A trademark is protectable . . . if it is either validly registered or a qualifying unregistered trademark." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). Notwithstanding Walmart-Stores' consent to the proposed amendment, many of the arguments in Walmart-Stores' memorandum in support of its motion to dismiss the Complaint are equally applicable to the proposed AC. As Walmart-Stores points out, registration on the Supplemental Register, unlike registration on the Primary Register, does not create prima facie evidence that a trademark is protectable (*see* ECF 9, Memo. of Law at 9). *See* 1 McCarthy on Trademarks and Unfair Competition §§ 19:38, 19:43 (5th ed. 2024); *see also* 15 U.S.C. § 1091(a).

A mark that is not registered on the Primary Register is protectable if it is sufficiently distinctive. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 531 (S.D.N.Y. 2012). Courts classify such marks into one of four categories "famously elucidated" by Judge Friendly: generic, descriptive, suggestive, and arbitrary or fanciful. *Id.* (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)). The JERSEY CITY® mark is a geographically descriptive, and descriptive marks are protectable "only if they are shown to have acquired secondary meaning to consumers." *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 195 (S.D.N.Y. 2006).

  A. <u>The Proposed AC Does Not Adequately Allege Secondary Meaning</u>

A party asserting trademark rights in a geographically descriptive mark such as JERSEY CITY® bears the burden of alleging that the mark has acquired secondary meaning. *See, e.g.,*

7

*Morgans Group LLC v. John Doe Co.,* No. 10-CV-5225 (KMW) (HBP), 2012 WL 1098276, at *6 (S.D.N.Y. Mar. 31, 2012) (explaining that geographically descriptive marks must "have acquired secondary meaning" to receive trademark protection).

Plaintiff has applied for registration on the Primary Register. (*See* ECF 30, Proposed AC ¶ 24.) The question becomes whether Plaintiff has adequately alleged that the JERSEY CITY® mark had acquired secondary meaning since its registration in March 6, 2018, on the Supplemental Register. A mark acquires secondary meaning when ordinary buyers come to "associate[ ] the mark in question with a single source." *Trombetta,* 414 F. Supp. 3d at 631.

Walmart-Stores argues that the allegations in the Complaint were insufficient to demonstrate that the mark had acquired secondary meaning. I agree, and the same conclusion is warranted in connection with the Proposed AC. Plaintiff's additional allegations in the Proposed AC do not rectify this problem.

I first address Plaintiff's argument that the issue of secondary meaning is inherently fact intensive and therefore should not be decided at the pleading stage (*see* ECF 37, Pl.'s Reply at 5). Plaintiff is correct that several Courts in this District have held that arguments that a mark lacks secondary meaning are not susceptible to adjudication on the pleadings. *See, e.g.*, *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) ("[T]he question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not . . . be resolved on a motion to dismiss.") (collecting cases). However, in those cases, the plaintiffs adequately alleged sufficient facts to suggest that the mark in question has acquired secondary meeting. *See, e.g., CourtAlert.com, Inc. v. e-L., LLC*, No. 12-CV-2473 (DAB), 2013 WL 4754819, at *6 (S.D.N.Y. Aug. 26, 2013) (denying motion to dismiss where the plaintiff, by alleging

its prominence in the field and use of the contested mark for more than a decade, "may be able to establish" secondary meaning, notwithstanding that other factors favored the defendant). If a plaintiff has not alleged facts that support an inference that the mark has acquired secondary meaning, the plaintiff's claims for trademark infringement and unfair competition cannot survive a motion to dismiss. *See, e.g., Lopez v. Nike*, No. 20-CV-0905 (PGG) (JLC), 2021 WL 128574, at *16 (S.D.N.Y. Jan. 14, 2021) (granting a motion to dismiss Lanham Act claims to protect use of a descriptive geographic mark where the plaintiff did not allege facts sufficient to support claims for unfair competition and trademark infringement), *report and recommendation adopted*, 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021).

The Second Circuit weighs six factors to determine whether a mark has shown secondary meaning – that is, that a buyer would associate the mark with a single source: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Id.* at *5. To survive a motion to dismiss, Plaintiff would need to include in the Proposed AC some of the facts necessary "to plausibly allege" that the mark has acquired secondary meaning. *Id.* at *2.

In *Hello I Am Elliot, Inc. v. Sine,* No. 19-CV-6905 (PAE), 2020 WL 3919505 (S.D.N.Y. July 2, 2020), dismissed a case for failure adequately to allege secondary meaning where the operative complaint contained more robust allegations than does the Proposed AC for all but one of the relevant factors. Indeed, the Court there held that the plaintiff had not "come close" to alleging facts sufficient to support an inference of secondary meaning. *Id.* at *10.

9

As to advertising expenditures, targeted advertising, even if low cost, may establish the advertising factor. *See Mortellito v. Nina of Cal., Inc.,* 335 F. Supp. 1288, 1291 (S.D.N.Y. 1972). The plaintiff in *Hello I Am Elliott* alleged the amount spent in the past few years, but the Court held that the operative complaint failed to allege that the advertisements featured the ELLIOT mark and that the advertising reached its target audience. *See Hello I Am Elliot, 2020 WL 3619505,* at *8. "Given the modest scale of [Plaintiff's] business, it is of course not expected that [s]he would come forward with evidence of high-cost advertising." *Gap*, 883 F. Supp. 2d at 425. But Plaintiff here does not provide any indication of the amount she has spent on advertising, or whether her advertising featured the JERSEY CITY® mark, or that the advertising reached its target audience, *see id.* at 426, stating only that she "promotes the sale of her clothing items via her brick-and-mortar retail store . . . , online, at tradeshows, street vendor fairs . . . and through social media promotions . . . ." (ECF 30, Proposed AC ¶ 21.).

The Proposed AC, like the operative complaint in *Hello I Am Elliot*, does not reference any consumer surveys linking the mark with the source. *See Hello I Am Elliot,* 2020 WL 3619505 at *9.

The operative complaint in *Hello I Am Elliot* alleged $13,000 in sales through 300 merchants; the Court noted that the sales figures were "much lower than those that courts have found successful" and that there were no allegations that the sales involved efforts to associate the mark with the plaintiff company selling items bearing the mark. *Id.* Plaintiff does not include any sales figures in the Proposed AC or describe efforts to link sales of clothing imprinted with the JERSEY CITY® mark to Plaintiff as the source of the items sold.

In both this case and *Hello I Am Elliot,* there is no allegation of unsolicited media coverage of the seller and the mark; the complaint in *Hello I Am Elliot* alleged that there had been media

coverage but neglected to allege that the coverage had been unsolicited, *see id.*, while the proposed AC contains no allegations about media coverage at all.

And neither case involved allegations of any trademark infringement other than the behavior at issue in the suits. (*See id.* at 10.)

It is true that the ELLIOT mark had been in use for three years only (*see id.*), while Plaintiff alleges her own continuous use of the JERSEY CITY® mark for over five years and the continuous use of the mark by her predecessors going back to 2001. (*See* ECF 30, Proposed AC ¶ 25; ECF 30, Ex. A at 23.) However, Courts have held that longstanding use alone cannot demonstrate secondary meaning. *See Nucleus Research Inc. v. 3Sixty Insights Inc.*, No. 22-CV-11339 (PBS), 2023 WL 8371975, at *5 (D. Mass. Sept. 7, 2023) (collecting cases).

Despite my conclusion that the trademark infringement and unfair competition claims could not survive a motion to dismiss because Plaintiff has not adequately alleged secondary meaning, I respectfully recommend that Plaintiff be allowed to file another motion for leave to amend with a further revised proposed amended complaint. Permitting Plaintiff another opportunity to move to amend her trademark infringement and unfair competition claims is particularly appropriate "given the factual nature of the secondary meaning analysis." *Hello I Am Elliot,* 2020 WL 3619505 at *10. It is possible that Plaintiff might be able to successfully allege that the JERSEY CITY® mark has developed secondary meaning. Secondary meaning evidence on consumers' perception of the JERSEY CITY® mark is within Plaintiff's knowledge and control; it would not be something that Plaintiffs would expect to obtain from Defendants in discovery. *See id.*

B. <u>Defendants' Alleged Use of "Jersey City" Is Not Necessarily Descriptive</u>

In Walmart-Stores' brief in support of its motion to dismiss the Complaint, Walmart-Stores raises the affirmative defense of fair use. (*See* ECF 9, Memo. of Law at 12.) Specifically, Walmart-Stores argues that "[u]se of a mark is considered 'fair' – and therefore not infringing – if it is" used not as a trademark to indicate the source of the product bearing the mark, but rather in a descriptive sense, and in good faith. (*Id.* (quoting *Arnold v. ABC, Inc.,* No. 06-CV-1747 (GBD), 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007).) Walmart-Stores would almost certainly raise the fair use affirmative defense in a response to the Proposed AC.

Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to address at the pleading stage. However, "[a]ffirmative defenses may be adjudicated at this stage in the litigation . . . where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

Walmart-Stores argues that Plaintiff does not allege that it used the JERSEY CITY® mark as a trademark but rather that it used the term in a descriptive sense to refer to a city in the State of New Jersey: Walmart-Stores contends that the accused products use "'JERSEY CITY' to reference the place of the same name, not to indicate the branded source of the item." (ECF 9, Memo. of Law at 12-15.) Defendant PlanetArt makes a similar argument. (*See* ECF 34, Letter at 1.) Those Defendants conclude that their descriptive use of the mark JERSEY CITY® is fair use and therefore

is not actionable. (*See* ECF 34, Letter at 1 (arguing that the Proposed AC "fails to show that Defendants' uses of the . . . JERSEY CITY mark were trademark uses, rather than descriptive")).

Plaintiff responds that "ornamental use of a trademark as a design print on clothing items by clothing companies and clothing brand owners has caused consumers of clothing products to associate ornamental use of a mark on clothing products as being the source provider of the clothing product." (ECF 37, Pl.'s Reply at 6.) She likens clothing bearing the JERSEY CITY® mark in ornamental lettering to clothing bearing marks such as GUCCI® or GAP® in ornamental lettering and asserts that the mark in ornamental lettering is understood to refer to the brand. (*See id.* at 6-7.) However, unlike the GUCCI® or GAP® marks, which have no descriptive meaning, JERSEY CITY® can refer to the city in the State of New Jersey with the same name.

The relevant question here is whether the allegations in the Proposed AC establish the conclusion urged by Walmart-Stores and PlanetArt – that Defendants' use of the phrase JERSEY CITY on clothing was descriptive, indicating the city in New Jersey, rather than identifying the clothing brand or source (*see* ECF 9, Memo. of Law at 12-15; ECF 34, Letter at 1). Walmart-Stores cites several cases defining descriptive use of a mark, such *Dessert Beauty, Inc. v. Fox*, which found that use of the term "love potion" was inactionable because it described a beauty product meant to make the user attractive. 568 F. Supp. 2d 416, 425 (S.D.N.Y. 2008). *Dessert Beauty* is distinguishable, however, as are other similar cases cited by Walmart-Stores, because the trademarked terms used in those cases described a characteristic of the allegedly infringing

13

products. Here, by contrast, JERSEY CITY does not describe a characteristic of the clothing bearing the mark.

*Kassa v. Detroit Metro Convention & Visitors Bureau*, also cited by Walmart-Stores (*see* ECF 9, Memo. of Law at 16), is more closely on point. There, the plaintiff, a Detroit-based entrepreneur, had a trademark in the phrase "Welcome to the D." *See* 150 F. Supp. 3d 831, 833-34 (E.D. Mich. 2015), *aff'd,* 672 Fed. App'x 575 (6th. Cir. 2017). The plaintiff alleged that the Detroit Metro Convention & Visitors Bureau and the Detroit Sports Commission infringed his trademark by hanging banners bearing the phrase "Welcome to the D" around the city in 2012 and 2015 to promote the 2012 World Series and the 2015 Volleyball Open National Championships. *Id.* at 834-36. "The D" is a common moniker for Detroit, and the court concluded that banners used the phrase "Welcome to the D" as a greeting to visitors to the city – a geographical location – rather than to identify the source of any product. *See id.* at 838.

The argument that *Kassa* is factually similar and should be viewed as persuasive has some force in evaluating the Proposed AC. However, in her reply in further support of her motion to amend, Plaintiff countered the argument that Defendants made fair use of the term JERSEY CITY® as a geographical descriptor with what I understand to be an assertion that the design elements of Defendants' clothing products bearing the JERSEY CITY® mark are evocative of the design elements of her JERSEY CITY® clothing products. (*See* ECF 37, Plaintiff's Reply at 6-7.) To the extent that Plaintiff could include such an allegation in her pleading, she may be able to defeat Defendants' fair use argument. Faced with a similar issue on a motion for summary judgment, in *Gap,* 883 F. Supp. 2d 400, Judge Paul A. Engelmayer reasoned that a stylized acronym of the initials LES, referring to the Lower East Side neighborhood, might present "a sufficiently stylized rendition of an otherwise

14

descriptive [geographic] term," such that a fact finder might side with the plaintiff's argument that the mark had acquired "inherent distinctiveness." *Gap,* 883 F. Supp. 2d at 415 (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir.2003)).[2]

Accordingly, amending the Complaint would not necessarily be futile, even though Plaintiff's Proposed AC in its current form would not in my view survive a motion to dismiss based on a fair use defense.

Plaintiff also argues that even if Defendants had used JERSEY CITY® not as an indication of a brand but instead in a descriptive sense, Defendants' fair use argument would fail because of her

---

[2] Even if Plaintiff can include such an allegation in a new proposed amended complaint, she would face a steep climb to ultimately prevail on her trademark and unfair competition claims. Plaintiff's JERSEY CITY® mark appears to have minimal stylization; it uses standard characters, in all-caps with a serif typeface. (*See* ECF 30, Proposed AC ¶ 21 (images of Plaintiff's JERSEY CITY® products); ECF 30, Ex. A at 22 (United States Patent Office registration indicating that Plaintiff's mark is registered on the Supplemental Register and consists of "standard characters without claim to any particular font style, size, or color").) Although "stylized shapes or letters may qualify [for protection]," the relevant inquiry is directed at whether "the [mark's] design is not commonplace but rather unique or unusual in the relevant market at the time it was introduced." *Gap*, 883 F. Supp. 2d at 416. In *Gap,* for example, although there was inherent distinctiveness to an "interlaced pattern" of the letters "L" "E" "S," an acronym for the Lower East Side, any distinctiveness was diminished by those "design elements" being neither "unusual [nor] unique in the [apparel] industry." *Id.* at 416, 420 (granting summary judgment in favor of the defendant and concluding that, although the mark's inherent distinctiveness was a "close call," the mark was ultimately weak and there was "no evidence in the record . . . that consumers associated the mark with plaintiff or his company"). "'[M]arks with minimal stylization may be inherently distinctive,' [but] such marks are weak and entitled only to minimal protection." *Id.* (quoting *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F. Supp. 2d 442, 450 (S.D.N.Y. 2008)). A party seeking to establish secondary meaning for such a mark must meet "'vigorous evidentiary requirements,' and must show that the mark acquired secondary meaning by the time the allegedly infringing mark came onto the market." *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 420 (S.D.N.Y. 2000) (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 215-16 (2d Cir.1985)). In *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631 (LJL), 2020 WL 2539116 (S.D.N.Y. May 19, 2020) ("*Adidas*"), Judge Lewis J. Liman analyzed the plaintiff's LES NYC mark, a descriptive geographical mark combining the acronyms for the Lower East Side and New York City, "without claim to any particular font, style, size, or color"; he reasoned that the descriptive geographical nature of the mark "suggest[ed] weakness," but concluded that "a defendant in an infringement suit – where the plaintiff has an

allegations in the Proposed AC of actual confusion and likelihood of confusion. (*See* ECF 37, Plaintiff's Reply at 9.) This is an incorrect statement of the law.

A defendant's use of a phrase not as a trademark but in a descriptive sense is not actionable even if that defendant's use of the phrase has caused actual confusion or likelihood of confusion. As articulated by the Supreme Court, "[s]ince the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use . . . ." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004); *see also Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020) ("Crucially, a defendant may raise a fair use defense even where the challenged material is likely to cause some confusion.").

## II. The Proposed AC Does Not Adequately Allege Unjust Enrichment

To state an unjust enrichment claim, a plaintiff must allege that "(1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). "[T]here are no indicia of an enrichment that was unjust where the pleadings fail[ ] to indicate a relationship between the parties that could have caused reliance or inducement." *Id.* "[U]njust enrichment is available only in unusual situations when,

---

incontestable mark [that is, a mark registered on the Principal Register]" – "may not succeed in a defense that declares the mark is entitled to no protection because it is descriptive." *Adidas,* 2020 WL 2539116, at *8. To ultimately prevail on her trademark claims, Plaintiff would face a "vigorous evidentiary" burden to prove that her minimally stylized descriptive geographical mark had already acquired secondary meaning at the time Defendants' products came on the market, without the same deference accorded to incontestable marks.

though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *WowWee Grp. Ltd. v. Meirly,* No. 18-CV-0706 (AJN), 2019 WL 1375470, at *8 (S.D.N.Y. Mar. 27, 2019). Courts in this Circuit routinely dismiss unjust enrichment claims brought in Lanham Act cases such as this one, because the unjust enrichment claims are duplicative of the trademark infringement and unfair competition claims. *See id.* (collecting cases).

Plaintiff here does not allege a relationship with any Defendant "that could have caused reliance or inducement"; the Proposed AC therefore does not adequately plead a claim of unjust enrichment. *Lopez v. BigCommerce, Inc.*, No. 16-CV-8970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017) (dismissing unjust enrichment claim based on alleged trademark infringement). Unless Plaintiff can allege such a relationship with Defendants, or any of them, permitting her to amend her claim for unjust enrichment would be futile.

### III.　Plaintiff Should Be Afforded Another Chance To Move To Amend the Complaint

"[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted). Plaintiff has "not yet had the benefit of a decision of the Court explaining the pleading standards necessary for [her] claims to survive a motion to

dismiss." *Al-Haj v. Akuamoah*, No. 19-CV-6072 (LJL), 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021).

It is possible that Plaintiff may be able to supplement the Complaint's trademark infringement and unfair competition claims with unpleaded evidence of secondary meaning. *See Hello I Am Elliot,* 2020 WL 3919505 at *10. In particular, to demonstrate that amendments in a new proposed amended complaint to the trademark and unfair competition claims are not futile, Plaintiff would need add allegations, if she can, about:

- the amount Plaintiff spent in the past few years on advertising and whether the advertisements featured the JERSEY CITY® mark and reached the intended audience;
- any consumer surveys linking the mark with Plaintiff as the source of items bearing the mark;
- sales figures for clothing imprinted with the JERSEY CITY® mark and any efforts to link sales of such clothing with Plaintiff as the source of the items sold;
- any unsolicited media coverage of Plaintiff and the mark;
- any trademark infringement other than the behavior at issue in this case; and
- whether the stylization and design elements used on her clothing products bearing the JERSEY CITY® mark had acquired secondary meaning before the allegedly infringing products came on the market.

*See id.* at *8-10. I therefore respectfully recommend that Plaintiff be permitted to file another motion to amend alleging claims of unfair competition and trademark infringement.

Leave to amend should be denied when it would be "futile," and when the "plaintiff cannot cure the deficiencies in [her] pleadings to allege facts sufficient to support [her] claim." *Onibokun v.*

*Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where "[t]he problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile). It seems highly unlikely that Plaintiff can cure the problems with her unjust enrichment claims by reformulating her allegations. Nothing in the Proposed AC suggests that Plaintiff had any relationship with any Defendant, and it would be odd for Plaintiff to have omitted information about such relationships if they existed. Nevertheless, because Plaintiff is proceeding pro se and should be given every reasonable chance to show that she has a valid claim, I respectfully recommend that she be permitted to include a claim for unjust enrichment in a revised proposed amended complaint, if she can truthfully allege that she had a relationship with any Defendant that created an "obligation running" from that Defendant to Plaintiff. *See WowWee Grp.,* 2019 WL 1375470, at *8. To demonstrate that amendments concerning unjust enrichment in a new proposed amended complaint are not futile, Plaintiff would need to add allegations, if she can, about any "obligation running" from Defendants to Plaintiff. *Id.*

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Your Honor **DENY** Plaintiff's application for leave to file the Proposed AC, without prejudice to her renewing her motion, with a new proposed amended complaint, within ten days of a decision by Your Honor denying her motion to amend.

DATED:  November 19, 2024
         New York, NY

                                        Respectfully Submitted,

                                        **ROBYN F. TARNOFSKY**
                                        **United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).