UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE M. REVERON,

                Plaintiff,

        v.

SPREADSHIRT, INC., et al.,

                Defendants.

CIVIL ACTION NO. 24-CV-4093 (JPC) (RFT)

**REPORT AND RECOMMENDATION**

**ROBYN F. TARNOFSKY, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is Plaintiff's application to amend the complaint alleging claims of trademark infringement and unfair competition. (*See* ECF 46, Letter.) For the reasons set forth below, I respectfully recommend that Plaintiff's motion for leave to amend be **DENIED** with prejudice.[1]

## FACTUAL BACKGROUND

I take as true the allegations from Plaintiff's second proposed amended complaint ("Second Proposed AC") (ECF 46).

Plaintiff acquired ownership of the JERSEY CITY® brand name in December 2023. (*See id.* ¶ 53.) Since at least 2001, Plaintiff's predecessors sold clothing under the JERSEY CITY® brand name. (*See id.* ¶ 40.) Since March 6, 2018, the mark JERSEY CITY® has been listed on the Supplemental Register. (*See id*. ¶ 59.) Plaintiff has a pending trademark application on for the Primary Register. (*See id.*)

---

[1]     A magistrate judge may grant a Rule 15 motion to amend by memorandum and order but must issue a report and recommendation to deny a motion to amend. *See, e.g., Xie v. JPMorgan Chase Short-Term Disability Plan,* 15-CV-4546 (LGS) (KHP), 2017 WL 2462675, at *1 (S.D.N.Y. June 6, 2017), *report and recommendation adopted,* 2018 WL 501605 (S.D.N.Y. Jan. 19, 2018).

Plaintiff and her predecessors have promoted and sold JERSEY CITY® branded clothing at a variety of stores, trade shows, and street fairs in the greater New York City area, including in Manhattan, New Jersey, and Connecticut, as well as through online sources and social media promotions. (*See id.* ¶¶ 46, 55.) JERSEY CITY® branded clothes have been promoted and endorsed by recording artists, music industry executives, clothing designers, and entrepreneurs and have an excellent reputation in the apparel industry. (*See id.* ¶¶ 44-45.)

Consumers associate the JERSEY CITY® mark with Plaintiff and her predecessors. (*See id.* ¶ 49.) Plaintiff concludes that the JERSEY CITY® brand name and mark have acquired secondary meaning in the marketplace in connection with clothing goods due to the longstanding use of the mark in the apparel industry by Plaintiff and her predecessors. (*See id.* ¶ 50.)

Defendants Spreadshirt and PlanetArt are commercial businesses that provide printing services to clothing companies and consumers and sell clothing, including to New York State and City residents, through online stores. (*See id.* ¶¶ 60-62, 121-123.) The items manufactured, promoted, and sold by Spreadshirt and PlanetArt include articles of clothing printed with the JERSEY CITY® mark. (*See id.* ¶¶ 63, 124.)

Spreadshirt and PlanetArt sell items bearing the JERSEY CITY® mark at cheaper price points than Plaintiff. (*See id.* ¶¶ 67, 127.) In addition, Spreadshirt uses the term JERSEY CITY as a keyword in online advertising. (*See id.* ¶ 64.)

Defendant Transform, a commercial business, acquired assets of Sears Holdings Management Corporation ("Sears") in 2019, after Sears sought bankruptcy protection. (*See id.* ¶ 83.) Transform promotes and sells clothing printed with the JERSEY CITY® mark through an online retail store, www.sears.com, including to New York State and City residents. (*See id.* ¶ 86.)

Defendant Walmart-Stores ("Walmart"), a commercial business and retailer of apparel, among other products, operates an online retail store, www.walmart.com, and sells clothing bearing the JERSEY CITY® mark, including to New York State and City residents. (*See id.* ¶¶ 98-100.)

Defendants' items bearing the JERSEY CITY® mark are not sold from or manufactured in the municipality called Jersey City. (*See id.* ¶¶ 71, 93, 109, 129.) Some of Plaintiff's customers contacted her in April 2024 asking if they could purchase shirts they had seen on the www.spreadshirt.com website directly from Plaintiff. (*See id.* ¶ 65.) Plaintiff was also contacted by customers about the clothing offered for sale online by Transform and Walmart; the customers thought the products sold by those retainers were sponsored by Plaintiff. (*See id.* ¶¶ 89, 102.)

## PROCEDURAL HISTORY

Plaintiff filed her pro se complaint on May 29, 2024, alleging trademark infringement, unfair competition, and unjust enrichment against Defendants Spreadshirt, Inc., Sears Holdings Management Corporation, Walmart, New Era Cap, LLC, and PlanetArt LLC. (*See* ECF 1.) On June 20, 2024, Walmart moved to dismiss, arguing that Plaintiff had failed adequately to allege secondary meaning in the JERSEY CITY mark, that Walmart's use of the term "JERSEY CITY" was descriptive and therefore non-infringing, and that Plaintiff had failed adequately to plead unjust enrichment. (*See* ECF 7, Mot. To Dismiss; ECF 9, Mem. of Law; ECF 10, Declaration of R. David Hosp ("Hosp Decl.").) On June 24, 2024, Your Honor referred the case to a magistrate judge for general pretrial management and dispositive motions. (*See* ECF 11, Order of Reference.)

On July 6, 2024, Plaintiff filed a stipulation of voluntary dismissal as to Defendant New Era Cap, LLC only (*see* ECF 19), which Your Honor so ordered on July 15, 2024. (*See* ECF 22.)

On July 16, 2024, Plaintiff wrote to inform the Court that she would like to file an amended complaint. (*See* ECF 23, Letter; ECF 37, Pl.'s Reply at 1-2 (indicating that Defendant Walmart does not oppose Plaintiff's amendment).) However, she had missed the deadline for filing an amended complaint as of right and she did not have consent of all parties. On July 24, 2024, I issued an order stating that if Plaintiff wished to file an amended complaint without the consent of all parties, she would have to file (1) a proposed amended complaint and (2) a statement of the reason for the amendment, the lack of prejudice to the opposing parties, and (3) the lack of futility. (*See* ECF 25.)

On August 2, 2024, Plaintiff filed an application to file an amended complaint, along with a proposed amended complaint ("Proposed AC"). (*See* ECF 30.) The Proposed AC replaced Defendant Sears Holdings Management Corporation with Defendant Transform SR Brands, LLC, and it also adds additional allegations about her use of "JERSEY CITY" as a mark. (*See id.*)

On August 16, 2024, Defendant PlanetArt filed its opposition to the application to file an amended complaint, arguing that while Plaintiff had taken some steps to bolster the allegations of secondary meaning, it would be futile for the Court to allow the proposed amendment because Defendants' use of the term JERSEY CITY was descriptive and therefore non-infringing. (*See* ECF 34, Letter.) No other Defendant opposed the application. On August 26, 2024, Plaintiff filed reply materials in further support of her application to amend the Complaint. (*See* ECF 36, Declaration of Stephanie M. Reveron; ECF 37, Reply.)

On July 26, 2024, I granted a letter motion (ECF 27) to permit Defendant PlanetArt to respond to the operative complaint within seven days after a denial of the motion to amend or within 14 days of a decision granting the motion to amend. (*See* ECF 28.) On October 2, 2024, I granted a letter motion (ECF 39) to permit Defendant Spreadshirt to respond to the operative

complaint within 14 days after a denial of the motion to amend or within 21 days after a decision granting the motion to amend. (*See* ECF 40.)

On November 20, 2024, I issued a report and recommendation recommending that Your Honor deny Plaintiff's motion to amend (ECF 30) but allow her leave to renew her motion with a new proposed amended complaint addressing the issues I had identified with the first iteration of her proposed amended complaint. (*See* ECF 43.) The report and recommendation explained that, to survive a motion to dismiss the claims of trademark infringement and unfair competition, Plaintiff would need to allege concrete facts supporting the factors considered by courts in this Circuit when determining whether a mark has acquired secondary meaning. Specifically, Plaintiff would need to allege:

1. the amount Plaintiff spent in the past few years on advertising and whether the advertisements featuring the JERSEY CITY® mark reached the intended audience;

2. any consumer surveys linking the mark with Plaintiff as the source of items bearing the mark;

3. sales figures for clothing imprinted with the JERSEY CITY® mark and any efforts to link sales of such clothing with Plaintiff as the source of the items sold;

4. any unsolicited media coverage of Plaintiff and the mark;

5. any trademark infringement other than the behavior at issue in this case; and

6. whether the stylization and design elements used on Plaintiff's clothing products bearing the JERSEY CITY® mark had acquired secondary meaning before the allegedly infringing products came on the market.

(*See id*.) No objections were lodged to the report and recommendation.

On December 10, 2024, Your Honor adopted my recommendation and directed Plaintiff to file, by December 20, 2024, an amended complaint if she could "remedy the deficiencies" that were identified in my report and recommendation. (*See* ECF 44, Order at 2.) On December 26, 2024, Plaintiff filed a letter attaching a new proposed amended complaint that she believes addresses the issues identified in my report and recommendation. (*See* ECF 46, Letter.) On December 26, 2024, Plaintiff filed a proposed stipulation and order dismissing PlanetArt from the case (*see* ECF 48, Proposed Stip.), which the Court treated as a notice of dismissal, and the Court dismissed PlanetArt from the case. (*See* ECF 50.) On December 30, 2024, I issued an order stating that I construed Plaintiff's letter as a motion to amend the operative complaint; giving Defendants until January 13, 2025, to oppose the motion to amend; giving Plaintiff until January 23, 2025, to file a reply, if any, in further support of the motion to amend. (*See* ECF 47, Order.)

The Second Proposed AC adds new substantive allegations, names six new Defendants (collectively, the "New Defendants"), and adds a claim for contributory trademark infringement. (*See* ECF 46, Second Proposed AC.) The most significant new allegations include information about the advertising efforts of Plaintiff and her predecessor (*see id.* ¶ 46); sales figures (*see id.* ¶ 47); unsolicited media coverage (*see id.* ¶ 48); and other instances involving claimed infringement of the JERSEY CITY® mark (*see id.* ¶¶ 104, 133-285).

On January 2, 2025, Your Honor issued an order dismissing without prejudice Walmart's motion to dismiss the Complaint (ECF 7) in light of Plaintiff's motion for leave to file the Second Proposed AC. (*See* ECF 49, Order.) On January 13, 2025, Walmart filed a brief and declaration opposing the motion for leave to amend. (*See* ECF 51, Walmart's Opp.; ECF 52, Hosp Decl.) Spreadshirt also opposed the motion for leave to amend, relying on Walmart's opposition. (*See*

ECF 54, Spreadshirt Opp.) Plaintiff filed a reply in further support of the motion for leave to amend (ECF 55), and Walmart, with leave of Court (ECF 47), filed a sur-reply (ECF 58.)

## LEGAL STANDARD FOR RULE 15 MOTIONS TO AMEND

As relevant here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[2] The Second Circuit has held that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). "Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

## ANALYSIS

There is no reason to believe that Plaintiff is acting in bad faith in pursuing the amendment. It is reasonable for her to seek to name the proper Defendants and to add new Defendants who are engaging in the same behavior as Defendants named in the original complaint. It also is reasonable for her to attempt to address issues with the Proposed AC raised by the Court. Nor is there any prejudice to Defendants given the early stage of the case. *See Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 253 (S.D.N.Y. 2014) (explaining that amending the

---

[2]     Unless stated otherwise, this report and recommendation omits internal quotation marks and citations from quotations.

complaint prior to close of discovery will not prejudice the defendants). The only question is whether the proposed amendments would be futile – that is, whether the Second Proposed AC could withstand a motion to dismiss. For the reasons set forth below, I conclude that the proposed amendments in the Second Proposed AC would be futile, because the Second Proposed AC could not withstand a motion to dismiss.

## I.    The Second Proposed AC Fails Adequately To Allege Trademark Infringement or Unfair Competition

Claims for federal and common law trademark infringement and unfair competition and common law trademark infringement and unfair competition, such as Plaintiff advances in the Second Proposed AC, are generally analyzed based on the same legal standard. *See, e.g., Privado Mktg. Grp. LLC v. Eleftheria Rest. Corp.*, No. 13-CV-3137 (ER), 2017 WL 1167332, at *7 (S.D.N.Y. Mar. 27, 2017) ("Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, trademark infringement under New York common law, and unfair competition under New York common law."); *Lopez v. The Gap, Inc.*, 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) ("*Gap*") ("Under New York law, the elements necessary to prevail on causes of action for trademark infringement and unfair competition . . . mirror the Lanham Act claims.").

To prevail on a Lanham Act trademark infringement claim, a plaintiff must show that her mark is entitled to protection and that the defendants' use of that mark is likely to cause confusion. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005). Whether the JERSEY CITY® mark is entitled to protection rather than likelihood of confusion appears to be the primary issue here.

"A trademark is protectable . . . if it is either validly registered or a qualifying unregistered trademark." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630 (S.D.N.Y. 2019). Many of the arguments

in Walmart's memorandum in support of its motion to dismiss the original complaint are equally applicable to the Second Proposed AC. As Walmart points out, registration on the Supplemental Register, unlike registration on the Primary Register, does not create prima facie evidence that a trademark is protectable (*see* ECF 9, Mem. of Law at 9). *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 19:38, 19:43 (5th ed. 2024); *see also* 15 U.S.C. § 1091(a).

A mark that is not registered on the Primary Register is protectable if it is sufficiently distinctive. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 531 (S.D.N.Y. 2012). Courts classify such marks into one of four categories "famously elucidated" by Judge Friendly: generic, descriptive, suggestive, and arbitrary or fanciful. *Id.* (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)). The JERSEY CITY® mark is geographically descriptive, and descriptive marks are protectable "only if they are shown to have acquired secondary meaning to consumers." *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 195 (S.D.N.Y. 2006).

A.    <u>The Second Proposed AC Does Not Adequately Allege Secondary Meaning</u>

A party asserting trademark rights in a geographically descriptive mark such as JERSEY CITY® bears the burden of alleging that the mark had acquired secondary meaning "before its competitor commenced use of the mark." *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 564 (2d Cir. 1990); *see also Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980) ("Even if [the plaintiff] has rights in the name . . . because its use of the name has acquired a secondary meaning, it could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired."). A mark acquires secondary meaning when ordinary buyers come to "associate[ ] the mark in question with a single source." *Trombetta,* 414 F. Supp.

3d at 631. "Secondary meaning analysis centers not on the public at large, but rather the consumer group relevant to the product or service." *Morgans Grp. LLC v. John Doe Co.*, No. 10-CV-5225 (KMW) (HBP), 2012 WL 1098276, at *5 (S.D.N.Y. Mar. 31, 2012) ("A plaintiff must show that a substantial segment of the relevant consumer group makes the requisite association between the product and the producer."). The key question thus is whether Plaintiff has adequately alleged that the JERSEY CITY® mark had acquired secondary meaning to the relevant consumer group before Defendants began using the mark.

Walmart correctly argued in its motion to dismiss the original complaint that Plaintiff's allegations were insufficient to demonstrate that the mark had acquired secondary meaning. (*See* ECF 9, Walmart's Mem. in Supp. of Mot. To Dismiss at 9-11.) The same conclusion was warranted in connection with the Proposed AC. (*See generally* ECF 43, Report and Recommendation; ECF 44, Order Adopting Report and Recommendation.)

Plaintiff's additional allegations in the Second Proposed AC do not rectify all the problems with the Proposed AC. Significantly, Plaintiff has not adequately alleged that the mark has acquired secondary meaning in the relevant market, and she certainly has not adequately alleged that the mark had acquired secondary meaning before Defendants began using it. Indeed, Plaintiff never specifies when the JERSEY CITY® mark acquired secondary meaning in the relevant market or when Defendants began offering the allegedly infringing products for sale.

    1.   Addressing Secondary Meaning on the Pleadings

I first address the argument that the issue of secondary meaning is inherently fact intensive and therefore should not be decided at the pleading stage. Several Courts in this District have held that arguments that a mark lacks secondary meaning are not susceptible to adjudication on the

pleadings. *See, e.g.*, *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) (collecting cases holding that "the question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not . . . be resolved on a motion to dismiss."). However, in those cases, the plaintiffs adequately alleged sufficient facts to suggest that the mark in question has acquired secondary meeting. *See, e.g., CourtAlert.com, Inc. v. e-L., LLC*, No. 12-CV-2473 (DAB), 2013 WL 4754819, at *6 (S.D.N.Y. Aug. 26, 2013) (denying a motion to dismiss where the plaintiff, by alleging its prominence in the field and use of the contested mark for more than a decade, "m[ight] be able to establish" secondary meaning, notwithstanding that other factors favored the defendant). If a plaintiff has not alleged facts that support an inference that the mark has acquired secondary meaning, the plaintiff's claims for trademark infringement and unfair competition cannot survive a motion to dismiss.

### 2. The Six-Factor Test

The Second Circuit weighs six factors to determine whether a mark acquired secondary meaning in the relevant market before the infringing products began to be sold: (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985). To survive a motion to dismiss, Plaintiff would have needed to include in the Second Proposed AC some of the facts necessary to plausibly allege that the mark has acquired secondary meaning before Defendants began selling products bearing the JERSEY CITY® mark.

In *Hello I Am Elliot, Inc. v. Sine*, No. 19-CV-6905 (PAE), 2020 WL 3619505 (S.D.N.Y. July 2, 2020), the Court dismissed a case for failure adequately to allege secondary meaning where the

operative complaint contained somewhat less robust allegations than does the Second Proposed

AC. The Court there held that the plaintiff had not "come close" to alleging facts sufficient to

support an inference of secondary meaning. *Id.* at *10.

### a. Advertising Expenditures

As to advertising expenditures, targeted advertising, even if low cost, may establish this

factor supports a conclusion that a mark has acquired secondary meaning. *See Mortellito v. Nina*

*of Cal., Inc.,* 335 F. Supp. 1288, 1291 (S.D.N.Y. 1972). "Advertising expenditures provide

circumstantial evidence of the possible effect that advertising of the trademark . . . may have on

consumers' association of it with the source of a product . . . ." *Rockland Exposition, Inc. v. All. of*

*Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 319 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012).

However, "merely showing that a certain amount was spent on advertising provides little support

for secondary meaning absent some demonstration that the advertisements caused consumers to

associate" the product with the plaintiff. *Id*. Expenditures to promote a mark "may evidence an

effort to establish secondary meaning, but the outlay, by itself, gives no indication of the relative

success of those endeavors." *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 202

(S.D.N.Y. 2000) (holding that the plaintiff's $12 million in advertising expenditures were insufficient

in the absence of any indication that the advertising had been effective in causing consumers to

associate the plaintiff's marks with plaintiff only).

"Given the modest scale of [the plaintiff's] business, it is of course not expected that [the

plaintiff] would come forward with evidence of high-cost advertising." *Gap*, 883 F. Supp. 2d at 425.

"Targeted albeit low-cost advertising may establish this factor, but only if the plaintiff can show

that it was successful in reaching the targeted audience." *LVL XIII Brands, Inc. v. Louis Vuitton*

*Malletier S.A.*, 209 F. Supp. 3d 612, 655 (S.D.N.Y. 2016), *aff'd,* 720 F. App'x 24 (2d Cir. 2017). *Hello I Am Elliott* is instructive on this issue: the plaintiff there alleged having spent $658,000 over the prior three years. *See* 2020 WL 3619505, at *8. The Court noted that the amount, although substantial, failed to show that the advertisements featured the ELLIOT mark, reached the target audience, or "caused consumers to associate" the mark with the plaintiff. *Id.* (explaining that "naked advertising statistics" do not support an inference of secondary meaning); *see also Gap*, 883 F. Supp. 2d at 426 (concluding that even if the "ordinary requirement of actual expenditures was relaxed in light of the small scale of [the plaintiff's] business," the advertising expenditures factor would "not support a finding of secondary meaning," because the plaintiff had failed to "come forward with any evidence his marketing activities succeeded in reaching a relevant segment of the population such that consumers associate [the marks at issue] with his company"); *Jewish Sephardic Yellow Pages*, *Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 345 (E.D.N.Y. 2007) (finding that the plaintiff's advertising expenditures did not support a conclusion that the mark had acquired secondary meaning because the plaintiff had not demonstrated that its efforts "succeeded in reaching the Jewish phonebook users who [were the] plaintiff's target audience").

Plaintiff here defines the relevant segment of the population as "consumers of clothing goods." (ECF 46, Second Proposed AC ¶ 46.) She states that, between 2018 and December 2023, her predecessor spent $80,000 to advertise the JERSEY CITY® mark to such consumers through "multiple nationwide print, radio and online fashion advertising platforms" and "national advertising platforms that all have an online presence via the worldwide internet" (*id.*); and that in 2024, she spent $1,100 on advertising directed to such consumers using "Instagram (in which you can select a targeted audience and/or demographic)" and "other clothing advertising platforms"

(*id.*). She asserts that "Plaintiff and her predecessor's advertising efforts prominently promoted and displayed the JERSEY CITY® mark on clothing goods . . . ." (*Id.*)

These expenditures do not support a conclusion that the JERSEY CITY® mark has acquired secondary meaning. While Plaintiff does allege, albeit in rather conclusory fashion, that she and her predecessor prominently featured the JERSEY CITY® mark in their advertising (*see id.*), she she does not allege that their advertising reached the relevant market. As to her predecessor, she alleges merely that he used "national advertising platforms" on the internet and says nothing about his success in reaching consumers of clothing. (*See id.*) Plaintiff does allege that since acquiring the JERSEY CITY® mark in late 2023, she has advertised on Instagram, which permits targeted advertising (*see id.*), but even drawing all permissible inferences in Plaintiff's favor, I do not believe I can conclude that Plaintiff's Instagram advertising reached the intended audience – saying that a platform allows targeted advertising does not necessarily mean that the advertising actually reached significant numbers of the right segment of consumers and caused them to associate the mark with Plaintiff. *See Hello I Am Elliot,* 2020 WL 3619505, at *8 (explaining that even far more significant advertising expenditures than those alleged here did not support a conclusion that the mark had acquired secondary meaning because the plaintiff had not adequately alleged that the advertising had reached the target audience or "caused consumers to associate" the mark with the plaintiff).

Plaintiff's allegations in the Second Proposed AC suffer from the additional problem that Plaintiff never alleges when Defendants, or any of them, began selling their products. To adequately plead that a mark has acquired secondary meaning, a plaintiff must provide some indication of when the allegedly infringing use began. *See Bobcar Media, LLC v. Aardvark Event*

*Logistics, Inc.*, 554 F. Supp. 3d 606, 619 (S.D.N.Y. 2020) ("[T]he relevant question [when assessing whether a mark has acquired secondary meaning] is the length and exclusivity of the use as of the date that [the defendant] entered the market."). It is impossible to determine whether Plaintiff's allegations about advertising expenditures during different periods support a conclusion that the JERSEY CITY® mark had acquired secondary meaning before Defendants entered the market without any allegation from Plaintiff as to when the alleged infringing activity started. Accordingly, the advertising activity does not support a finding that Plaintiff has adequately alleged that her mark had acquired secondary meaning before the start of Defendants' allegedly infringing use.

### b. Consumer Surveys

The Second Proposed AC, like the operative complaint in *Hello I Am Elliot*, does not reference any consumer surveys linking the mark with the source. *See Hello I Am Elliot,* 2020 WL 3919505, at *9. This factor therefore does not support a conclusion that Plaintiff's JERSEY CITY® mark has acquired secondary meaning, let alone that it did so before Defendants began their allegedly infringing use. *See Rockland Exposition*, 894 F. Supp. 2d at 320 ("Consumer surveys can be the most persuasive evidence of secondary meaning because they are direct evidence of . . . consumer groups' association . . . with a particular source.").

### c. Unsolicited Media Coverage

In *Hello I Am Elliot,* the complaint alleged that there had been media coverage but neglected to allege that the coverage had been unsolicited. *See* 2020 WL 3619505, at *9. The Second Proposed AC alleges that Plaintiff's predecessor "received a great deal of unsolicited nationwide media coverage of himself which coverage focused on clothing products bearing the JERSEY CITY® clothing brand" and goes on to list several media outlets that provided the

unsolicited coverage. (*See* ECF 46, Second Proposed AC ¶ 48.) This conclusory allegation does not

demonstrate that the unsolicited media coverage factor supports a determination that the JERSEY

CITY® mark had obtained secondary meaning prior to Plaintiff's purchase of the mark in late 2023,

let alone that it had done so at the time Defendants began their allegedly infringing use; Plaintiff

never says when that use began. *See MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 21-CV-7922

(AKH), 2022 WL 684756, at *11 (S.D.N.Y. Mar. 8, 2022) (stating that "conclusor[y]" allegations in

the complaint that the plaintiff had "receive[d] unsolicited media coverage, naming various

publications" did not support a conclusion as to when or even if "consumers began to associate

[the mark]" with the plaintiff), *aff'd in relevant part, vacated in unrelated part, remanded,* No. 22-

713-CV, 2022 WL 17175400 (2d Cir. Nov. 23, 2022).

     *d.  Sales Success*

       The operative complaint in *Hello I Am Elliot* alleged $13,000 in sales; the Court there noted

that the sales figures were "much lower than those that courts have found successful" and that

there were no allegations that the sales involved efforts to associate the mark with the plaintiff

company selling items bearing the mark. 2020 WL 3619505, at *9. Plaintiff here alleges

significantly more sales volume: between 2018 and December 2023, her predecessor generated

$1.2 million in sales of JERSEY CITY® branded clothing (averaging $200,000 in sales per year), and

in 2024, she generated $23,000 in sales of JERSEY CITY® branded clothing. (*See* ECF 46, Second

Proposed AC ¶ 47.) But even the sales volumes alleged by Plaintiff are comparable to amounts

that were held to be insufficient to support a finding of secondary meaning. *See, e.g., Denimafia,*

*Inc. v. New Balance Athletic Shoe, Inc.,* No. 12-CV-4112 (AJP), 2014 WL 814532, at *5, *12 (S.D.N.Y.

Mar. 3, 2014) (ruling on a motion for summary judgment that clothing sales of $328,000 between

2004 and 2006 and of $170,000 in 2007 "d[id] not support a finding of acquired distinctiveness");

*LVL XIII Brands,* 209 F. Supp. 3d at 660 (determining on a motion for summary judgment that approximately $150,000 in sales revenue over approximately eight months was insufficient to establish secondary meaning). Nor does the Second Proposed AC make anything other than conclusory allegations that the sales involved efforts to associate the mark with her company as the seller, *see Hello I Am Elliot,* 2020 WL 3619505, at *9. Accordingly, the sales success factor does not support a conclusion that the Proposed Second AC adequately pleads that the JERSEY CITY® mark has acquired secondary meaning.

### e.  *Other Instances of Trademark Infringement*

Plaintiff in this case, unlike the Plaintiff in *Elliot,* alleges other instances of trademark infringement besides the behavior at issue in the suit. (*See* ECF 46. Second Proposed AC ¶ 51.) Specifically, Plaintiff alleges that "there have been multiple attempts by third parties to plagiarize the mark by other parties using JRZ CTY as a similar mark, but such infringing uses were resolved via a cease-and-desist notice sent by [Plaintiff's] predecessor." (*Id.*) Plaintiff never specifies when this other allegedly infringing activity took place. Thus, even if Plaintiff's barebones allegation about other instances of trademark activity provides weak support to Plaintiff's claim that the JERSEY CITY® mark has acquired secondary meaning, without information on when the events took place and when Defendants began their infringing behavior, this factor does not support a conclusion that the mark acquired its secondary meaning before Defendants began selling infringing products.

### f.  Length of Time the Mark Was in Exclusive Use

The ELLIOT mark had been in use for three years only, *see Hello I Am Elliot,* 2020 WL

3619505, at *10, while Plaintiff alleges that she and her predecessors made continuous use of the

JERSEY CITY® mark going back for over 20 years. (*See* ECF 46, Second Proposed AC ¶ 50.) Plaintiff

does not, however, make any factual allegations to support secondary meaning for the mark prior

to 2018. (*See generally id*.) Even with respect to the period after 2018, Plaintiff has not alleged that

her use of the JERSEY CITY® mark was exclusive and never indicates when Defendants began their

allegedly infringing activity. Accordingly, this factor does not support a conclusion that the JERSEY

CITY® mark has acquired secondary meaning and did so before Defendants began their allegedly

infringing activity. *See, e.g., Carson Optical, Inc. v. Prym Consumer USA, Inc*., 11 F. Supp. 3d 317,

344 (E.D.N.Y. 2014) (ruling on a motion to dismiss that the plaintiff's conclusory assertion of

exclusive use for over 15 years did not support a finding of secondary meaning); *MidCap Bus.*

*Credit,* 2022 WL 684756, at *11 (determining that conclusory allegations about the length of

exclusive use did not support a finding of secondary meaning), *aff'd in relevant part, vacated in*

*unrelated part, remanded,* No. 22-713-CV, 2022 WL 17175400 (2d Cir. Nov. 23, 2022).

****

The allegations in the Second Proposed AC provide weak support for a conclusion that one

of the Second Circuit's six factors counsels in favor of a finding that the JERSEY CITY® mark has

acquired secondary meaning. Accordingly, I do not believe that the Proposed Amended Complaint

adequately pleads that the mark has come to have secondary meaning. However, even if Plaintiff

had adequately pleaded that the mark at some point came to have secondary meaning, none of

the six factors counsels in favor of concluding that the Proposed Amended Complaint adequately

pleads that the mark came to have secondary meaning before Defendants began their allegedly infringing activity. Therefore, I respectfully recommend that Your Honor DENY Plaintiff's application for leave to file the Second Proposed AC.

B.    Defendants' Fair Use Defense Is Successful on the Face of the Second Proposed AC

In the event that Your Honor disagrees with my conclusion that Plaintiff has failed adequately to allege that her JERSEY CITY® mark had acquired secondary meaning before Defendants began their alleged infringing use, I address Defendants' fair use defense. In Walmart's brief in opposition to the pending motion for leave to amend, Walmart raises the affirmative defense of fair use. (*See* ECF 51, Walmart's Opp. at 15-24.) Specifically, Walmart argues that "[u]se of a mark is considered 'fair' – and therefore not infringing – if it is" used not as a trademark to indicate the source of the product bearing the mark, but rather in a descriptive sense, and in good faith. (*Id.* at 16 (quoting *Arnold v. ABC, Inc.,* No. 06-CV-1747 (GBD), 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007).)

1.    Defendants' Fair Use Defense May Be Addressed on Their Motion To Dismiss

Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to address at the pleading stage. However, "[a]ffirmative defenses may be adjudicated at this stage in the litigation . . . where the facts necessary to

establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

      2.   The Second Proposed AC Demonstrates that Defendants Used "Jersey City" as a Geographical Identifier Rather than an Indication of the Source of Their Products

Walmart argues that Plaintiff does not allege that it used the JERSEY CITY® mark as a trademark but rather that it used the term in a descriptive sense to refer to a city in the State of New Jersey: Walmart contends that the accused products use "'JERSEY CITY' to reference the place of the same name, not to indicate the branded source of the item." (ECF 51, Walmart's Opp. at 17-18.) Walmart concludes that its descriptive use of the mark JERSEY CITY® is fair use and therefore not actionable. (*See id.* at 17-20.)[3]

Plaintiff alleges that because the allegedly infringing products are not manufactured or sold in Jersey City, Defendants cannot be using the term JERSEY CITY to refer to the city in New Jersey as opposed to her brand. (*See* ECF 46, Second Proposed AC ¶ 71) "However, the location of the manufacture or sale of the goods is simply not relevant. Instead, the issue is whether the marks are being used for their original descriptive meaning." *Reveron v. Zumiez, Inc.,* No. 23-CV-10114

---

[3]     Plaintiff appears to believe that if her mark acquired secondary meaning before Defendants began their sale of allegedly infringing products, then Defendants may not advance a fair use defense. (*See* ECF 55, Pl.'s Reply at 4-5.) This is incorrect. Even if Plaintiff's mark is entitled to trademark protection, if Defendants' use of the term JERSEY CITY is descriptive of the location, Defendants are entitled to a fair use defense. *See, e.g., Reveron v. Zumiez, Inc.*, No. 23-CV-10114 (JGLC) (GWG), 2024 WL 5131627, at *2 (S.D.N.Y. Dec. 17, 2024) (granting in part motion to dismiss after assuming without deciding that the plaintiff had a protectible interest in the marks because "whether [the plaintiff] has a valid, enforceable right to any of the six marks bears no relevance to the particular ground for dismissal advanced by defendants in this motion, in which defendants argue that [the plaintiff's] claims fail because the use of the alleged trademarks constitutes fair use under the Lanham Act and state law"), *report and recommendation adopted,* 2025 WL 934356 (S.D.N.Y. Mar. 27, 2025).

(JGLC) (GWG), 2024 WL 5131627, at *8 (S.D.N.Y. Dec. 17, 2024) ("*Zumiez*"), *report and recommendation adopted,* 2025 WL 934356 (S.D.N.Y. Mar. 27, 2025).

Plaintiff also alleges that "[i]n the apparel industry, it is common for clothing brand owners . . . to offer and sell clothing items featuring ornamental prints of their trademarked brand name" on clothing, and that "common and long-standing ornamental use of a trademark as a design print on clothing items by . . . clothing brand owners has caused consumers of clothing products to associate ornamental use of a mark on clothing products as being the source provider of the clothing item." (ECF 46, Second Proposed AC ¶¶ 3, 5.) Plaintiff likens the JERSEY CITY® mark in ornamental lettering to marks such as KENNETH COLE NEW YORK® and DKNY® in ornamental lettering. (*See id.* ¶ 4.) However, the latter two marks refer to brands (Kenneth Cole and Donna Karan, or DK) that associate themselves with New York City; those two marks do not refer to New York City itself. As such, the latter two marks are not geographically descriptive in the same way that the JERSEY CITY® mark could be, since JERSEY CITY® could refer to the city in New Jersey with the same name.

The relevant question here is whether the allegations in the Second Proposed AC necessarily establish the conclusion urged by Walmart – that Defendants' use of the phrase JERSEY CITY on clothing was descriptive, indicating the city in New Jersey, rather than identifying the clothing brand or source (*see* ECF 51, Walmart's Opp. at 17-20). Walmart cites several cases defining descriptive use of a mark, including *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831 (E.D. Mich. 2015), *aff'd,* 672 Fed. App'x 575 (6th Cir. 2017). (*See* ECF 51, Walmart's Opp. at 16.) As I explained in my prior report and recommendation, *Kassa* involved a Detroit-based entrepreneur who had a trademark in the phrase "Welcome to the D"; the plaintiff

alleged that the Detroit Metro Convention & Visitors Bureau and the Detroit Sports Commission infringed his trademark by hanging banners bearing the phrase "Welcome to the D" around the city in 2012 and 2015 to promote the 2012 World Series and the 2015 Volleyball Open National Championships. (*See* ECF 43, Report and Recommendation at 14.) "The D" is a common moniker for Detroit, and the court concluded that banners used the phrase "Welcome to the D" as a greeting to visitors to the city – a geographical location – rather than to identify the source of any product. *See Kassa,* 150 F. Supp. 3d at 838.[4]

I concluded in my earlier report and recommendation that the argument that *Kassa* is factually similar and should be viewed as persuasive had some force, but that Plaintiff had countered Walmart's fair use defense with an assertion that the design elements of Defendants' clothing products bearing the JERSEY CITY® mark are evocative of the design elements of her JERSEY CITY® clothing products. (*See* ECF 43, Report and Recommendation at 15.) I stated in my report and recommendation that, "[t]o the extent that Plaintiff could include such an allegation in

---

[4]    I am aware that in *Zumiez,* a case that has substantial similarities to this one, Judge Gabriel W. Gorenstein concluded, in a report and recommendation adopted by Judge Jessica G.L. Clarke, that *Kassa* was distinguishable: he reasoned that there, unlike in *Zumiez*, the geographical phrase at issue appeared alongside other words that made clear that the phrase reflected a location. *See Zumiez, Inc.,* 2024 WL 5131627, at *6. Judge Gorenstein reasoned that the additional language clarifying that the phrase in *Kassa* referred to a location explained why the *Kassa* defendant's use of the phrase was protected fair use while the defendant's use of the name of a neighborhood in *Zumiez* was not necessarily protected fair use. *See id.* He concluded that "[h]ere, it is not implausible that the trademarked words at issue were used to identify the source of the t-shirt given that there is nothing on the shirt to indicate that the words are referring to a geographic location. *Id.* at *10. In this case, I conclude that it is implausible that the trademarked words at issue were used to identify the source of the merchandise rather than a geographic location. Additionally, this case is different from *Zumiez* because Plaintiff here contends that the design of her JERSEY CITY® mark is distinctive and that Defendants' fair use argument is undermined by the design similarities between Defendants' products and hers (*see* ECF 46, Second Proposed AC ¶ 107) – a contention that is belied by Plaintiff's own exhibits showing her products and Defendants' products.

her pleading, she may be able to defeat Defendants' fair use argument," noting that, "[f]aced with a similar issue on a motion for summary judgment, in *Gap,* 883 F. Supp. 2d 400, Judge Paul A. Engelmayer had reasoned that a stylized acronym of the initials LES, referring to the Lower East Side neighborhood, might present a sufficiently stylized rendition of an otherwise descriptive [geographic] term, such that a fact finder might side with the plaintiff's argument that the mark had acquired inherent distinctiveness." (ECF 43, Report and Recommendation at 14-15, n.2 (citing *Gap,* 883 F. Supp. 2d at 415).)

The Second Proposed AC includes such an allegation. Specifically, Plaintiff alleges: that "the design elements of the t-shirts and other clothing items offered for sale by the Defendants bearing the JERSEY CITY® mark are evocative of the design elements" of the clothing sold by Plaintiff; that the similarities include "use of a similar font, font sizes and placement of the printed mark on the clothing products"; that Plaintiff "offers clothing products bearing her JERSEY CITY® mark as an ornamental print on clothing items"; and that Defendants "are using Plaintiff's JERSEY CITY® mark as a trademark in a prominent ornamental print on the front of their clothing products." (ECF 46, Second Proposed AC ¶¶ 16-17, 20.)

Plaintiff includes in the Second Proposed AC and its exhibits pictures of her JERSEY CITY® products (*see id.* ¶¶ 17, 55) and pictures of products sold by Defendants (*see id.* Ex. C (allegedly infringing Spreadshirt products); Ex. D (allegedly infringing Sears products); Ex. E (allegedly infringing Walmart products); Ex. F (allegedly infringing Cafepress products); Ex. G (allegedly infringing RedBubble products); Ex. H (allegedly infringing Zazzle products); Ex. I (allegedly infringing TP Apparel products); Ex. J (allegedly infringing Etsy products); Ex. K (allegedly infringing Amazon products); Ex. L (allegedly infringing New Balance product).) Those pictures show that

Plaintiff's JERSEY CITY® mark has at best minimal stylization, using standard characters in all-caps with a serif typeface. (*See id*. ¶¶ 17, 55.)[5]  The accused products used a variety of different styles – some products used all-caps, in some cases with a serif and others a sans-serif typeface, and other products used cursive writing with upper and lowercase letters; some products used the term Jersey City once and others repeated the term multiple times in different colors. (*See id.* Exs. C-K.)

Accordingly, the exhibits to the Second Proposed AC contradict Plaintiff's allegation that the design elements of her JERSEY CITY® clothing products are distinctive and that that the design elements of Defendants' clothing products bearing the JERSEY CITY® mark are evocative of the design elements of Plaintiff's clothing products (*see id.* ¶¶ 16-17). *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, "a district court

---

[5]     Plaintiff's United States Patent Office registration indicates that Plaintiff's mark consists of "standard characters without claim to any particular font style, size, or color." (ECF 46, Second Proposed AC Ex. B (United States Patent Office registration) at 73.)

"[M]arks with minimal stylization may be inherently distinctive, [but] such marks are weak and entitled only to minimal protection." *Gap*, 883 F. Supp. 2d at 416 (quoting *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F. Supp. 2d 442, 450 (S.D.N.Y. 2008)). A party seeking to establish secondary meaning for such a mark must meet "vigorous evidentiary requirements, and must show that the mark acquired secondary meaning by the time the allegedly infringing mark came onto the market." *Thompson Med.*, 753 F.2d at 215-16). In *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631 (LJL), 2020 WL 2539116 (S.D.N.Y. May 19, 2020) ("*Adidas*"), Judge Lewis J. Liman analyzed the plaintiff's LES NYC mark, a descriptive geographical mark combining the acronyms for the Lower East Side and New York City, "without claim to any particular font, style, size, or color"; he reasoned that the descriptive geographical nature of the mark "suggest[ed] weakness," but concluded that "a defendant in an infringement suit – where the plaintiff has an incontestable mark [that is, a mark registered on the Principal Register]" – "may not succeed in a defense that declares the mark is entitled to no protection because it is descriptive." *Adidas*, 2020 WL 2539116, at *8. As I explained in my prior report and recommendation, to ultimately prevail on her trademark claims, Plaintiff would face a "vigorous evidentiary" burden to prove that her minimally stylized descriptive geographical mark had already acquired secondary meaning at the time Defendants' products came on the market, without the same deference accorded to incontestable marks. (*See* ECF 43, Report and Recommendation at 15 n.2.)

may consider . . . documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"); *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 175 (N.D.N.Y. 2011) (considering, on a motion to dismiss trademark infringement claims, representative photographs appended to amended complaint).

The allegations of the Second Proposed AC and the exhibits thereto do not plausibly support a conclusion that Defendants used the term JERSEY CITY written with design elements evocative of Plaintiff's products "as a symbol to attract public . . . attention . . . to build an association with consumers between" Defendants and "the [allegedly infringing] phrase . . . ." *Kelly-Brown*, 717 F.3d at 308. The use of the allegedly infringing term in a descriptive sense to refer to a geographical location "overshadows the plaintiff's mark" and thus "demonstrates that the defendant had no intent to trade on the plaintiff's good will." *Zumiez,* 2024 WL 5131627, at *8 (quoting *Kelly-Brown*, 717 F.3d at 312-13).

3.   Plaintiff's Cease-and-Desist Letters Do Not Defeat Defendants' Fair Use Defense

Plaintiff further counters Defendants' fair use defense by alleging that she put Defendants on notice of her claim of trademark infringement and unfair competition, concluding that Defendants' subsequent use of the mark was in bad faith. (*See* ECF 46, Second Proposed AC ¶¶ 74-75, 111-13, 151-53, 179-81, 207-09.) However, as Walmart correctly points out, "knowledge of trademark ownership alone is insufficient to support an inference of bad faith." (ECF 51, Walmart's Opp. at 23) (quoting *Outhouse PR, LLC v. Northstar Travel Media, LLC,* No. 19-CV-5979 (NRB), 2020 WL 2512092, at *7 (S.D.N.Y. May 15, 2020), *vacated pursuant to settlement*, 2020 WL 12979826 (S.D.N.Y. Oct. 28, 2020)). "[S]ending a cease-and-desist letter cannot create trademark rights that do not otherwise exist and, therefore, cannot by itself constitute a basis for finding bad faith."

*Outhouse PR,* 2020 WL 2512092, at *7. "[T]he failure to completely abandon the use after

receiving a cease and desist letter is insufficient to support an allegation of bad faith as a matter of

law." *Id.* An entity may rely in good faith on its fair use defense in deciding to continue to sell an

accused product, particularly when the contested mark is geographically descriptive, as is the case

here. *See E.R. Squibb & Sons, Inc. v. Cooper Lab., Inc.*, 536 F. Supp. 523, 532 (S.D.N.Y. 1982) ("In

choosing a highly descriptive mark, [the plaintiff] acted at its peril; where a second comer chooses

a descriptive word to name its product, more than simple knowledge of the prior use is needed to

show an intent to misappropriate goodwill.").

    4.   Plaintiff's Allegations of Actual Confusion
        Do Not Defeat Defendants' Fair Use Defense

Plaintiff also renews her argument that even if Defendants had used JERSEY CITY® not as an

indication of a source but instead in a descriptive geographical sense, Defendants' fair use

argument would fail because of her allegations in the Second Proposed AC of actual confusion and

likelihood of confusion. (*See* ECF 55, Plaintiff's Reply at 5.) As Walmart points out (*see* ECF 58,

Walmart's Sur-Reply at 1-2), and as I explained in my earlier report and recommendation, this is an

incorrect statement of the law:

> A defendant's use of a phrase not as a trademark but in a descriptive sense is not
>
> actionable even if that defendant's use of the phrase has caused actual confusion or
>
> likelihood of confusion. As articulated by the Supreme Court, "[s]ince the burden of
>
> proving likelihood of confusion rests with the plaintiff, and the fair use defendant has
>
> no free-standing need to show confusion unlikely, it follows . . . that some possibility
>
> of consumer confusion must be compatible with fair use . . . ." *KP Permanent Make-*
>
> *Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004); *see also Tiffany & Co.*

*v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020) ("Crucially, a defendant may raise a fair use defense even where the challenged material is likely to cause some confusion.").

(ECF 43, Report and Recommendation at 16.)

## II.    The Second Proposed AC Fails Adequately To Plead a Claim of Contributory Infringement

As relevant to the new claim of contributory infringement by service providers, Plaintiff must allege that Defendants "continue[d] to supply [their] [product or service] to one whom [they] [knew] or [had] reason to know [was] engaging in trademark infringement." *Row, Inc. v. Hotels*, No. 15-CV-4419 (JFK), 2018 WL 3756456, at *5 (S.D.N.Y. July 19, 2018). Such a claim requires a plaintiff to allege that the "service provider[s] had more than a general knowledge or reason to know that [their] service [was] being used to [infringe a trademark], and sufficient control over infringing activity to merit liability." *Id.* at *6. The service provider must have "[s]ome contemporary knowledge of which particular listings are infringing or will infringe in the future . . . ." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010).

Plaintiff alleges that Walmart (and certain other Defendants) were "placed on notice of Plaintiff's intellectual property rights," "continue to provide services to [ ] account sellers that [they] know[ ] to be engaged in infringing activity," and "can manage, monitor, and control the infringing activity." (ECF 46, Second Proposed AC ¶¶ 112-14, 151-54, 179-82, 207-10.) But these allegations relate to general knowledge that Walmart's services were allegedly being used to infringe Plaintiff's mark. Plaintiff makes no concrete allegations that Walmart "was ever made aware of any specific allegedly infringing conduct by any alleged infringer in connection with [its] services prior to this action." *Lopez v. Bonanza.com, Inc.*, No. 17-CV-8493 (LAP), 2019 WL 5199431,

at *15 (S.D.N.Y. Sept. 30, 2019); *see also Sellify Inc. v. Amazon.com, Inc.*, No. 09-CV-10268 (JSR), 2010 WL 4455830, at *4 (S.D.N.Y. Nov. 4, 2010) (finding that the defendant lacked "particularized knowledge" notwithstanding the plaintiff's call to inform the defendant of allegedly infringing advertisements by a third party).

Plaintiff's allegations regarding control of the allegedly infringing activity also fall short. Plaintiff makes only the conclusory allegation that "Walmart can manage, monitor, and control the infringing activity on its www.walmart.com website." (ECF 46, Second Proposed AC ¶ 114.) In *Bonanza,* when evaluating nearly identical allegations, Judge Loretta A. Preska held that an allegation of the "ability to manage, monitor and control the infringing activity" without any assertion of "how or in what manner" such control was exercised was a "restatement[ ] of the legal standard and . . . thus plainly insufficient to survive a motion to dismiss." *Bonanza*, 2019 WL 5199431, at *16.

The contributory infringement claim set out in the Second Proposed AC could not withstand a motion to dismiss, because Plaintiff does little more than recite the legal elements of the claim. Accordingly, allowing Plaintiff to assert this claim would be futile.

III.    **Plaintiff Should Not Be Afforded Another Chance To Move To Amend the Complaint**

"[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir. 2000). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010). Plaintiff had an opportunity to submit the Second Proposed AC after she "had the benefit of a decision of the Court explaining the pleading

standards necessary for [her] claims to survive a motion to dismiss." *Al-Haj v. Akuamoah*, No. 19-

CV-6072 (LJL), 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021). My prior report and

recommendation provided a roadmap for what Plaintiff needed to do to revise the Proposed AC to

address its deficiencies. Plaintiff tried to follow those directions, but her new allegations are not

sufficient to plead claims that could survive a motion to dismiss.

      Most fundamentally, with respect to the trademark infringement claim, the Second

Proposed AC does not contain concrete factual allegations supporting a conclusion that the JERSEY

CITY® mark has acquired secondary meaning, let alone that it did so before Defendants entered

the market – the timing of which is not specified in the Second Proposed AC. My prior report and

recommendation (ECF 43) explained the information that Plaintiff would need to include to

successfully plead a trademark infringement claim, directing her to specify: the amount she spent

in the past few years on advertising and whether the advertisements featuring the JERSEY CITY®

mark reached the intended audience; whether there are any consumer surveys linking the mark

with Plaintiff as the source of items bearing the mark; sales figures for clothing imprinted with the

JERSEY CITY® mark and any efforts to link sales of such clothing with Plaintiff as the source of the

items sold; any unsolicited media coverage of Plaintiff and the mark; any trademark infringement

other than the behavior at issue in this case; any other information supported a conclusion that

her mark had acquired secondary meaning before the allegedly infringing products came on the

market. (*See id.* at 18.)

      Plaintiff provided some of the requested information, but she made only conclusory

allegations to support some of the factors considered by the Second Circuit in evaluating whether

a mark has acquired secondary meaning. She also never says when Defendants began their

allegedly infringing activity, which is necessary for her to show that her mark had acquired secondary meaning prior to that activity. Given that Plaintiff had instructions describing all the information she needed to include in a Second Proposed AC, there is no basis to conclude that Plaintiff could fix these flaws if given another chance to try to replead.

The Second Proposed AC also fails adequately to allege that Plaintiff's JERSEY CITY® mark uses a sufficiently stylized rendition of an otherwise descriptive geographic term, such that a fact finder might credit Plaintiff's argument that the mark had acquired inherent distinctiveness. To the contrary, the exhibits to the Second Proposed AC demonstrate that Plaintiff's JERSEY CITY® mark was not particularly stylized and that Defendants' products were not evocative of her style. This is a substantive issue with Plaintiff's claims that could not be addressed by another effort to replead.

The Second Proposed AC likewise fails adequately to allege that Defendants acted in bad faith; to the contrary, the allegations in the Second Proposed AC are susceptible to no plausible interpretation other than that Defendants acted in good faith in using the term Jersey City as a geographical descriptor. And Plaintiff is incorrect that her allegations of actual confusion and likelihood of confusion surrounding the JERSEY CITY® mark support a trademark infringement claim or an unfair competition claim even if she has not adequately alleged that Defendants used the term JERSEY CITY® as a mark rather than a geographical descriptor. These too are substantive issues that could not be cured by revising the Second Proposed AC.

As to the contributory infringement claim, the Second Proposed AC fails to allege in non-conclusory terms that Defendants had the particularized knowledge or the ability to control others' infringing activity necessary to state such a claim; and Plaintiff has not suggested that she

could supply concrete particulars demonstrating that it is plausible that Defendants had such knowledge or ability.

<u>**CONCLUSION**</u>

For the reasons set forth above, I respectfully recommend that Your Honor **DENY** Plaintiff's application for leave to file the Second Proposed AC, with prejudice; and **ORDER** that Defendants Walmart, Spreadshirt, and Sears respond to the Complaint (ECF 1) within seven days of any order adopting this report and recommendation.

DATED:    May 19, 2025
          New York, NY


                    Respectfully Submitted,


                    **ROBYN F. TARNOFSKY**
                    **United States Magistrate Judge**


**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).